## WHAT CONSTITUTES TRAFFICKING IN INTOXICATING LIQUOR.

[Common Pleas Court of Franklin County.]

NELLIE LEONARD v. WILLIS G. BOWLAND, TREASURER.

Decided, November, 1906.

*Liquor Laws—Tax Assessed under the Aiken Law—Evidence as to Sales—Seller Engaged in the Business, When—Burden of Proof—Distraint for Non-payment—Injunction—98 O. L., 99.*

1. Where a liquor tax has been regularly entered by the county auditor, the duplicate becomes by operation of the statute *prima facie* evidence as to the amount and validity of such tax, and the burden is upon the one so assessed of proving that he was not engaged in the liquor business at the time covered by the assessment.

2. A traffic in intoxicating liquors may be carried on without maintaining a bar or keeping a stock of liquor constantly on hand; and one formerly engaged in the business, but who has ostensibly retired therefrom, will be held to be still so engaged, when the evidence shows that four bottles of beer, which were obtained from a saloon at fifteen cents a bottle, were sold for one dollar a bottle at the same place where the seller formerly carried on the business; and a levy on goods and chattels in satisfaction of the tax assessed against such business will be sustained.

3. The fact that no demand was made at the seller's place of business for the payment of said tax becomes immaterial after the parties and the chattels levied on are before the court for a determination of the issues involved.

4. Penalties are assessed by way of punishment and can not be refunded; and the minimum amount collectible in this case is $392.30, plus four per cent. collection fees and costs by distress and sale.

EVANS, J.

The plaintiff seeks to enjoin the county treasurer from advertising and selling her household goods, levied upon under distraint by said treasurer for non-payment of liquor tax and penalties claimed by defendant to be due from plaintiff.

By cross-petition the defendant prays for an order for leave to sell said chattel property for payment of said liquor tax,

penalties and costs, and for the vacation of the restraining order.

The principal question here for determination is whether the plaintiff was engaged in the traffic in intoxicating liquors on and subsequent to May 28, 1906, in this city. She claims that she was not so engaged at said time, and, if her contention is true, then she would be entitled to a permanent injunction. On the other hand, if she was engaged in said traffic at said time then her said goods and chattels so levied on would be subject to sale in satisfaction of said tax, penalties and costs. On June 13, 1906, the defendant, as county treasurer, entered upon the tax duplicate against plaintiff the amounts of taxes and assessments and of the non-payment thereof for the liquor tax under the act of March 28, 1906, and that plaintiff was engaged in said traffic at 348 East Mound street, this city, on and subsequent to May 28, 1906.

Plaintiff admits that she was engaged in the traffic in intoxicating liquors at 348 East Mound street from November 1, 1905, to May 28, 1906. She claims that she had paid her liquor tax to May '28th, but that from and after said date she was not engaged in said traffic; that she sold her stock of liquors on May 26, and that the latter part of June she left said place, and about July 1 she stored her goods with the Buckeye Storage Company; that she kept no bar fixtures at said place; that prior to November 1, 1905, she had been in the saloon business elsewhere, where she had and used bar fixtures, but that when she moved to 348 East Mound street she had no use for bar fixtures.

She says that from May 28 to the last of June, when she left said house, she got beer over a back fence from a nearby saloon for herself; that on June 11, she admits that she got four quarts of beer for some visitors; that these visitors, four men, who came together, called for beer; that she told the men she did not keep it, and they asked her if she could get some; that one of the men gave her $1, which she handed to one of the girls, living there with plaintiff, and that the girl got a quart bottle of beer; that three other bottles were also procured for the men; she says they were not paid for, except the men

before they left threw some money in her lap and that she made no change; that she don't know how much money they threw in her lap. She says that the beer costs fifteen cents a quart bottle.

One of the girls, who says she went after the beer at a saloon near the rear of this house, says she paid fifteen cents a bottle for it, that she got four bottles, and that the men left $4 for the four bottles; that plaintiff did not offer to give back change to the men, and that nothing was said about change.

The four men aforesaid, who visited said house on the night of June 11, and secured the four bottles of beer, were all inspectors under the state dairy and food commissioner, and had been sent there by said department to seek information if liquors were sold there, and if said place was liable for assessment as a place not on the duplicate, and report the same to the auditor of state. This is a duty devolved upon said department by Section 4364-14a of the Revised Statutes.

Upon the report of said inspectors to the state auditor that plaintiff was liable to such assessment, the auditor of state caused the same to be entered upon the assessment duplicate of said Franklin county against the plaintiff, together with the 20 per cent. penalty provided by said act.

The testimony of all four of said inspectors was adduced on the hearing. Their testimony is in substance, that about 9 o'clock on the night of June 11, 1906, they went to plaintiff's place at 348 East Mound street, this city, and after being admitted, one of the men proposed to buy a bottle of beer; that plaintiff said she did not sell beer, but would send for it, and said that they would have to give her $1; one of them gave her $1; all four of the men testify that plaintiff herself went out and presently came in with a bottle of beer; presently another one of the men proposed to get another bottle of beer; that plaintiff went out for it, and one of the men desiring to find out where she got it, as he stated, went along with her; he says as he passed through a rear room he saw three bottles of beer on a table there; that he saw plaintiff get the beer over a fence at a saloon near the rear of this house; the men testify to having purchased from plaintiff four bottles of beer; that

before they left plaintiff proposed to treat, and one of the men
followed her out; that she stepped on a ladder and tapped on
the fence, and a man came out and gave her two more bottles,
which made six bottles. They said that they asked her how
much she wanted for the beer, and that she said $1 a bottle,
and that they paid her $4 for the four bottles.

It is claimed by plaintiff that the evidence does not prove
that plaintiff was at said time engaged in the business of traf-
ficking in intoxicating liquors; that she did not keep liquors
in her house, and that the fact that she took money from said
men for the beer drank by them showing a profit to her would
not, for only one such occasion, prove that she was in the busi-
ness of trafficking in intoxicating liquors.

Section 4364-16 of the Revised Statutes defines what is meant
by the phrase "trafficking in intoxicating liquors," as used in
Section 4364-9, Revised Statutes, and provides that such phrase
"'means the buying or procuring and selling of intoxicating
liquors otherwise than upon prescription issued in good faith
by reputable physicians in actual practice," etc. So that it
does not necessarily mean that to engage in said business one
must have and maintain a bar and bar fixtures, nor to have a
stock of liquors constantly on hand.

It appears from the evidence that on this one evening the sale
of said four bottles of beer, which cost plaintiff but fifteen
cents a bottle, resulted in a profit to her of $3.40. While there
is no evidence before the court of sales made by her on any
other occasions, yet from the above sales and the profits it can
readily be seen that by an arrangement with a nearby saloon
a person could carry on this traffic with considerable profit
by conveniently providing the stock from such saloon in quanti-
ties such as the demands of her trade require.

If this were allowed it would defeat the very purpose of
the statutes, and for that reason it is clearly within the defini-
tion of the phrase of "trafficking in intoxicating liquors."

The question here for determination is not, as counsel for
plaintiff contend, whether one sale alone could constitute such
person as engaged in said business. This must be taken in
consideration with the evidence that the plaintiff was up to

May 28, by her own admission, engaged in said business at said place. Whether or not the fact that she did not make known her intention to continue said traffic from and after May 28, and by having the same so entered on the tax duplicate, caused the department to send said inspectors to investigate on June 11, does not appear. But she having been openly engaged in said traffic at said place to May 28, after said date, when the act of March 28, 1906, increasing said tax to $1,000 had gone into operation, an investigation was caused by the auditor of state, which resulted in discovering the plaintiff selling beer at said place, which she procured from a nearby saloon, at a profit of eighty-five cents per bottle to herself.

If the case stood alone on a single sale, with no other circumstances surrounding it, such as above stated, there would be greater difficulty in reaching a conclusion as to whether such sale sufficiently proved that she was engaged in the business of trafficking in intoxicating liquors. But the fact that soon after May 28, the time to which she had paid the tax, and in two weeks thereafter, she is found selling beer in the same place at a profit, would be sufficient in my opinion to bring her within the contemplation of the statute, and the auditor would be justified in placing her on the assessment duplicate.

For this reason I am of the opinion that the cases cited by counsel for plaintiff are not applicable to cases such as disclosed by the facts in this case.

By operation of the statute, on the facts of this case, the burden devolves upon the plaintiff to prove that she was not at said time engaged in said business. Upon the report of said inspectors to the auditor of state, and the auditor of state having caused the assessment to be entered against such person found to be engaged in said business, upon the assessment duplicate of the proper county by the auditor thereof, together with the penalty of twenty per centum, then by operation of Section 1104, Revised Statutes, said duplicate shall be received as *prima facie* evidence on the trial of the amounts and validity of such taxes and assessments, and of the non-payment thereof.

The evidence that she was not engaged in said business, and that she was not continuing the business after said May 28, does not overcome said *prima facie* case.

The circuit court in *Simpson* v. *Serviss,* 3 C. C., 433, held that where a person, having made return that his business is confined exclusively to malt or vinous liquors, or both, thereafter, during the assessment year, makes a single sale of any other intoxicating liquors, the assessment upon his business is thereby increased, as provided by Section 5 of said act of May 14, 1886.

The above case is authority, and controls the case at bar so far as a single sale is concerned in connection with the other fact that plaintiff was conducting said business openly at said place shortly before said time in question.

The fact that the defendant made no demand at plaintiff's place of business before making said levy on her said goods and chattels, is not material now in view of the fact that both the parties and the said goods and chattels are before the court in this action for a full determination of the issues between the parties.

Penalties are assessed by way of punishment, and it is held in this state that such can not be refunded (*Simpson* v. *Serviss,* 3 C. C., 433). The minimum assessment under the act of March 28, 1906, is $200. No sum less than that can be assessed. The assessment above said sum was refunded on the assessment duplicate.

The full amount assessed, which is required by statute, on the duplicate against plaintiff was $961.54; the 20 per centum penalty thereon was $192.30. There was a refunder on the duplicate of the original amount assessed reducing the same to the minimum of $200; this, together with the penalty of $192.30, makes $392.30; to this will be added four per centum collection fees and costs by distress and sale, as provided by Section 4364-12, Revised Statutes, making in all $430.76, which amount I find the defendant is entitled to recover from the sale of said goods and chattels of the plaintiff so levied on. I find that the sheriff's fee of $3.00 is included in said item of four per centum.

I am unable to find from the evidence before me what amount is due the said Buckeye Storage Company, or that the defendant is under obligations to account to said company. It seems

from the evidence that said company has charged the same against the plaintiff, and consequently will be relegated to its lien on said goods for its charges, subject to the lien of defendant for the amount found as aforesaid.

My finding therefore is against the plaintiff, and in favor of the defendant as aforesaid. The temporary restraining order is dissolved, and defendant is granted leave to sell said goods and chattels in satisfaction of the above amount so found, and the costs of this action are adjudged against the plaintiff.